Hillsborough-northern judicial district
No. 2003-826

### J. DANIEL LINEHAN, HIGH SHERIFF

### v.

### ROCKINGHAM COUNTY COMMISSIONERS

Argued: June 17, 2004
Opinion Issued: July 16, 2004

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Eugene M. Van Loan III* on the brief and orally), for the petitioner.

*Sheehan, Phinney, Bass + Green, P.A.*, of Manchester (*Christopher Cole* and *Elizabeth A. Bailey* on the brief, and *Mr. Cole* orally), for the respondents.

DUGGAN, J. The petitioner, J. Daniel Linehan, High Sheriff (sheriff), appeals a ruling of the Superior Court (*Mangones*, J.) granting in part and denying in part his petition for declaratory judgment and other equitable relief. We affirm.

The sheriff filed a petition for declaratory judgment and other equitable relief asserting that the respondents, the Rockingham County Commissioners (commissioners), have impermissibly interfered with his constitutional, statutory and common law authority to administer the Rockingham County Sheriff's Department. This case is the culmination of long-standing disagreements between the sheriff and the commissioners on issues relating to county governance and the management of county financial affairs.

In his petition for declaratory judgment, the sheriff specifically challenged the commissioners' authority to require him to comply with certain county-wide policies and procedures relating to budgetary control, financial reporting and internal financial controls, the line-item transfer policy, the payment of wages and benefits to sheriff's department personnel and the authority to purchase goods and services for the sheriff's department. After a bench trial, the trial court issued a lengthy and comprehensive order.

On appeal, the sheriff argues that the trial court erred when it distinguished between law enforcement and non-law enforcement functions when allocating authority between the sheriff and the commissioners. The sheriff further argues that the trial court erred in ruling that: (1) the commissioners have the power to establish county-wide personnel policies and procedures which set the terms and conditions of the employment of non-deputy personnel; (2) the commissioners have the authority to make line-item transfers within the sheriff's budget and from the sheriff's budget into the budget of another county department; (3) the commissioners have the authority to institute a county-wide spending freeze, which freezes expenditures from the sheriff's budget; (4) the sheriff does not have the authority to set the standards for the purchase of non-law enforcement goods and services for the operation of the sheriff's department; and (5) the only exception to its rulings is that a policy, procedure or action instituted by the commissioners may not directly interfere with the sheriff and his deputies' performance of their law enforcement duties.

The issues raised by this appeal call upon us to interpret the statutes that relate to the commissioners' authority, see RSA ch. 28 (2000), the county convention's authority, see RSA ch. 24 (2000 & Supp. 2003), and the sheriff's authority, see RSA ch. 104 (2001). In addition, we must interpret the State Constitution as it applies to the sheriff's authority. N.H. CONST. pt. II, arts. 38, 71. We review the trial court's interpretation of the statutes and the constitution de novo. Monahan-Fortin Properties v. Town of Hudson, 148 N.H. 769, 771 (2002); State v. McLellan, 149 N.H. 237, 240 (2003).

*I. Allocation of authority*

First, the sheriff argues that the trial court erred in distinguishing between law enforcement and non-law enforcement functions when allocating authority between the sheriff and the commissioners. Specifically, the sheriff argues that, because he is a constitutional officer, he has the exclusive authority to administer the sheriff's department, including the provision of law enforcement services and all other

operations of the department, so long as he complies with the sheriff's department budget. We disagree.

Part II, article 71 of the New Hampshire Constitution provides that "sheriffs . . . shall be elected by the inhabitants of the several towns, in the several counties in the state, according to the method now practiced, and the laws of the state." Except for the authority to deliver writs of impeachment, N.H. CONST. pt. II, art. 38, there are no other express powers granted to the sheriff in the constitution.

■ "Where the sheriff is named in the Constitution his duties are the same as they were at the time the Constitution was adopted." 1 W. ANDERSON, SHERIFFS, CORONERS AND CONSTABLES § 43, at 37 (1941). His duties and authority, however, are not rendered unalterable by virtue of the sheriff being a constitutional officer. *See Daniels v. Hanson*, 115 N.H. 445, 448 (1975). The sheriff's duties and responsibilities, "unless expressly prescribed by the state constitution, are not immutable or exclusive, but are subject to legislative alteration and control." 70 AM. JUR. 2D *Sheriffs, Police, and Constables* § 56, at 270 (1987). "[T]he legislature is entirely at liberty to increase, decrease, or modify the powers and duties incident to this position." *Id.* § 2; *see, e.g.*, *Soper v. Montgomery County*, 449 A.2d 1158, 1161 (Md. 1982); *In re Supervision and Assignment of Petit Jury Panels*, 292 A.2d 4, 6 (N.J. 1972). Thus, the sheriff maintains his common law powers, duties and responsibilities as they were at the time the constitution was adopted, except insofar as they have been modified by constitutional provisions or legislative enactments. *Daniels*, 115 N.H. at 448.

At common law, the sheriff was the chief law enforcement officer of the county. *Id.* at 449. Generally, the sheriff's common law powers included conserving public peace, preserving public order, preventing and detecting crime, enforcing criminal laws by, among other things, raising a posse and arresting persons who commit crimes in their presence, providing security for courts, serving criminal warrants and other writs and summonses, and transporting prisoners. *South v. Maryland*, 59 U.S. 396, 402 (1855). Although the sheriff retains his common law duties, the legislature has modified them. *See, e.g.*, RSA ch. 105 (2001) (providing for local police officers and State police).

■ To the extent the non-law enforcement functions of the sheriff's office were part of the sheriff's common law duties, the legislature has modified these responsibilities by vesting the authority to manage and control county affairs in the county government. The county government consists of "two sets of officers, —the county convention and the county commissioners." *Brown v. Grafton County*, 69 N.H. 130, 131 (1896). The

county convention is comprised of the State representatives for the districts of each county, RSA 24:1, and has "the power to raise county taxes, make appropriations, and authorize the purchase or sale of county real estate," *Burling v. Speaker of the House*, 148 N.H. 143, 152 (2002) (quotation omitted). The county commissioners are elected by the voters in each county commissioner district in the county, RSA 653:1 (Supp. 2003), and "have the general management and control of the financial affairs of the county and the management and control of its property except as limited by the powers conferred on the county convention," *O'Brien v. County*, 80 N.H. 522, 524 (1923) (quotation omitted).

As the trial court correctly noted, the commissioners have the statutory authority "to institute county-wide policies and procedures to facilitate the management and control of county finances and assets." Thus, we agree with the trial court's ruling that:

> The Sheriff has exclusive authority to control the provision of law enforcement services within his department and the terms and conditions of employment of deputy sheriffs, so long as the Sheriff complies with the overall budget as adopted by the County Convention. The Commissioners may not interfere with the Sheriff's direct provision of law enforcement duties.
>
> The Commissioners have responsibility for overall day-to-day county financial management and control of county assets and liabilities, except as may be limited by the powers granted to the County Convention. The Commissioners, therefore, have authority to implement administrative policies and procedures to safeguard the County's assets and monitor the County's financial liabilities, and the Sheriff must cooperate with these county-wide policies and procedures, so long as they do not directly interfere with the Sheriff's ability to provide law enforcement services within the county.
>
> Non-deputy positions within the Sheriff's Department, such as clerks, dispatchers and other support employees, would come under county-wide administrative personnel policies and procedures governing general terms and conditions of their employment, subject to the further conclusions noted herein. The Commissioners, however, do not have authority to interfere with the terms and conditions of the deputy sheriffs' employment, so long as the Sheriff complies with the overall budget constraints relating to the deputy sheriffs' employment. Further, if the administrative and ancillary policies and procedures implemented by the Commissioners materially conflict with, or

interfere with the Sheriff's constitutional authority to provide law enforcement services, the Commissioners' policies must yield to the Sheriff's constitutional mandate.

## II. Terms and conditions of employment

Second, the sheriff argues that the trial court erred in ruling that the commissioners have the power to establish county-wide personnel policies and procedures which set the terms and conditions of the employment of non-deputy personnel in the sheriff's department. We disagree.

■ The sheriff has express statutory authority to hire and fire deputy sheriffs. RSA 104:3, :27. We have also recognized that the sheriff has the authority to determine the functions of the deputy sheriffs. *Trachy v. LaFramboise*, 146 N.H. 178, 181 (2001). There is no similar authority for the sheriff to set the terms and conditions of employment for non-deputy personnel.

The legislature, however, has required the commissioners to "employ such number of clerks and agents as [they] deem necessary." RSA 28:10. Likewise, the commissioners are required to "adopt and establish rules and procedures for the discharge, removal, or suspension of its employees." RSA 28:10-a, I.

Thus, we agree with the trial court's ruling that:

> [E]mployees within the Sheriff's Department, other than deputy sheriffs, are not immune from county-wide personnel policies and procedures that have been adopted and implemented by the Commissioners. Thus, the Commissioners have the authority to set terms and conditions of their employment via county-wide personnel policies and procedures covering such items as sexual harassment, [workers'] compensation, calculation of overtime, pay grades and pay rates.

## III. Line-item transfers and spending freeze

Third, the sheriff argues that the trial court erred in ruling that the commissioners have the authority to make line-item transfers within the sheriff's department and from the sheriff's budget into the budget of another county department. The sheriff also argues that the trial court erred in ruling that the commissioners have the authority to institute a county-wide spending freeze, which freezes expenditures from the sheriff's budget. We disagree.

■ The legislature has vested in the commissioners "the general management and control of the financial affairs of the county." *O'Brien*, 80

N.H. at 524. This includes requiring the county to maintain a line-item budget, *see* RSA 24:14, I, and authorizing the commissioners to transfer appropriations between line items, so long as the request does not exceed the total sum of appropriations, RSA 24:15, III. Moreover, in *Daniels*, we held that:

> The county convention is the agency endowed with the authority to determine the amount of taxes to be raised for county operations and how these funds will be appropriated. It necessarily possesses the power to determine in its discretion how the county moneys are to be allocated among the officials and departments competing for them.

*Daniels*, 115 N.H. at 451. Accordingly, we agree with the trial court's ruling that "[t]he Commissioners have the authority to make line item transfers between county departments" and that the sheriff is not immune from a county-wide spending freeze imposed by the commissioners.

### IV. Purchase of non-law enforcement goods and services

Fourth, the sheriff argues that the trial court erred in ruling that the sheriff is required to comply with the commissioners' county-wide policies and procedures governing competitive bidding. We disagree.

The commissioners have the express authority to "purchase personal property for the use of the county and its officers[,]" as well as the authority to sell county personal property that is no longer needed. RSA 28:6. The legislature requires that "[a]ny purchase of equipment, materials, services, or leases made by Rockingham county in an amount exceeding $5,000 shall be by competitive bidding." RSA 28:8-f, II. The statute specifically states that the competitive bidding requirement "shall apply to all county departments in Rockingham county, and to the offices of county sheriff." RSA 28:8-f, I.

Accordingly, because the legislature granted the commissioners the authority to purchase property and expressly stated that the sheriff is subject to the competitive bidding requirement, we agree with the trial court's ruling that "the Sheriff is not excused from the county-wide competitive bidding policy and procedures."

### V. Exception for interference with law enforcement duties

Lastly, the sheriff argues that the trial court erred in ruling that the only exception to its rulings is that a policy, procedure or action instituted by the commissioners may not directly interfere with the sheriff and his deputies' performance of their law enforcement duties. We disagree.

As we discussed at length above, the sheriff maintains his common law powers, duties and responsibilities as chief law enforcement officer of the county. On this record, therefore, the trial court was correct in noting that the commissioners' authority is limited when it interferes with the sheriff's law enforcement duties.

*Affirmed.*

BRODERICK, C.J., and NADEAU, DALIANIS and GALWAY, JJ., concurred.